# Exhibit A

## PROBABLE CAUSE STATEMENT
### For CDR-1 or CDR-2

Municipal Court of __Burlington Township__ Burlington County
*(Insert Court Name)*

State v. __Kevin Smith__   Complaint Number: __W-2014- 427 -0306__
*(Insert Name of Person Being Charged)*

### Section II
*(To be completed by police officer or civilian complainant)*

I swear or certify that, to the best of my knowledge, information, and belief, the accused committed the offenses(s) charged. This belief is based upon the following facts and circumstances:

On September 11, 2013 at 1327 hours, the Burlington Township Police Department was dispatched to 31 Larkin Road, Burlington, New Jersey for the report of a home invasion that had occurred. I am familiar with the address from prior police investigations. Upon my arrival, I observed a subject walking on Larkin Road towards the lower end numbers of the street. I recognized this person to be Thomas A. Wallace, AKA "Sonny" of 31 Larkin Road, Burlington, New Jersey, 08016, DOB: 01/25/1986.

T. Wallace was wearing only shorts and no shirt. I observed two black females standing on the curb in front of 29 Larkin Road, at the corner next to the entrance of the park. I approached T. Wallace and inquired as to what occurred. During this interaction, I noticed that T. Wallace had numerous cuts and red marks on his body to include severe cuts above his left eye that were bleeding. I requested an ambulance to respond to my location to transport T. Wallace to the hospital.

Located on the sidewalk in front of 24 Larkin Road were two pieces of gray duct tape. The larger of the two had audio/video cord entwined with the tape. There was blood and hairs attached to the duct tape. I photographed the item and secured them as evidence. T. Wallace advised that three subjects had entered his home at 31 Larkin Road and began to assault him. T. Wallace advised he was then taken down to the basement area where he was tied up and struck with a gun as the suspects inquired about where his money was located in his house. T. Wallace advised that the suspects then left the home. T. Wallace advised that he then walked to a neighbor's house at 18 Larkin Road, and made contact with the resident who he was familiar with. T. Wallace advised that the police were then contacted by one of the members in the household. T. Wallace was then transported to Lourdes Hospital for evaluation. The two female victims involved in the incident were identified as: Sheron Y. Wilson, 38 Washington Street, Mount Holly, New Jersey, 08060, DOB: 12/30/1984 and Tatiana N. Johnson, 838 North Route 130, Burlington, New Jersey, 08016, DOB: 08/13/1988.

✓ Ptl. Fenimore, Ptl. Hreso, and I made entry into the residence and secured the same. There were no additional persons in the residence. Upon clearing the home, it was noted that the upstairs bedrooms were in disarray and it appeared the rooms were ransacked. I then checked the rear portion of the basement where the washer and dryer were located. I observed blood on the floor and oil tank. Due to the nature of the incident and the volume of potential evidence, the Burlington County

1 of 7

Prosecutor's Office Evidence Management Unit was contacted to assist with the investigation. Sgt. D. Kohler of the Burlington County Prosecutor's Office was contacted due to the allegation of a sexual assault that had occurred.

While conducting my investigation, I was informed that S. Wilson disclosed that she was sexually assaulted during the home invasion/robbery. She was transported to Lourdes Hospital, Willingboro, New Jersey for evaluation. Det. M. Carnivale along with Det. Craig of the BCPO responded to Lourdes Hospital to obtain a taped statement from S. Wilson. While standing by at the residence the homeowner arrived on location. He is identified as: Alexander T. Wallace, 31 Larkin Road, Burlington, New Jersey, 08016

Alexander Wallace was advised of the incident involving his home. I advised A. Wallace of the potential forensic evidence that was possibly in his home and requested his permission to allow the police to process his home. I read A. Wallace a Burlington Township Consent to Search form. He stated he understood the form and signed the same granting permission at 1527 hours. I remained at the residence until DSgt. Kohler along with the Burlington County Prosecutors Office Evidence Collection Unit responded to process the scene for forensic evidence. I then responded to the Burlington Township Police Department to obtain a taped statement from T. Johnson. At 1553 hours T. Johnson was escorted to the Burlington Township Detective Division to provide a taped statement in regards to the incident. Present during the interview was Det. R. Hageman of the Burlington County Prosecutors Office. In summary T. Johnson advised that T. Wallace is her boyfriend. T. Johnson advised that she spends much of her time with T. Wallace. T. Johnson advised that she and Wallace stay at a friend's apartment in Edgewater Park, New Jersey. The apartment belongs to a subject known to T. Johnson as Carl LNU "AKA" Boog.

T. Johnson advised that she and T. Wallace woke up in the morning and T. Wallace was contacted by S. Wilson on the telephone. T. Johnson advised that they gathered clothes from the apartment that needed to be washed and they departed. T. Wallace dropped her off at her house to wash clothes. T. Johnson advised that later T. Wallace picked her up from her house and they went to pick up S. Wilson in Mt. Holly. T. Johnson advised that T. Wallace drove S. Wilson to a pharmacy in Florence, New Jersey so S. Wilson could pick up a prescription. T. Johnson advised that T. Wallace then drove to his house on Larkin Road to get the laundry. T. Johnson advised that she and Wilson waited in T. Wallace's vehicle parked in front of the house while T. Wallace entered the home. T. Johnson advised that she observed two black males on foot in the area of 31 Larkin Road. The subjects had the same blue tee shirts with an advertisement. T. Johnson advised that she then observed a third black male wearing the same shirt walk past them and met the other two subjects.

T. Johnson described one of the subjects as being tall with a North Jersey style accent. This subject had dreadlocks that were wrapped up in a Rastafarian style hair wrap. T. Johnson advised that the two other black males had short hair. She described one of the suspects as having facial hair and the second was clean shaven. T. Johnson advised that the three subjects all had black khaki pants on. T. Johnson advised that the subjects approached the vehicle and inquired about a GMC dealership in the area. T. Johnson advised that she did not recognize the subjects. T. Johnson advised that T. Wallace was exiting the house at this point. T. Johnson advised that the subjects approached T. Wallace prior to speaking to her and Wilson.

T. Johnson advised that T. Wallace walked back into the house and was followed in by two of the subjects. T. Johnson advised that one of the subjects remained outside walking around and appeared to be on his phone. T. Johnson advised that the subject that remained outside was the subject that had dreadlocks with the hair wrap. T. Johnson advised that T. Wallace and the two subjects were in

the house for approximately twenty minutes. T. Johnson advised that she attempted to call T. Wallace several times and his phone went straight to voicemail. T. Johnson advised that the subject who was outside then entered the home several times and returned. The subject then approached her and asked if she was T. Wallace's girlfriend. T. Johnson advised that the subject stated to her that T. Wallace wanted her inside. T. Johnson advised that she then entered the front and the subject was walking behind her into the home. T. Johnson advised that once she entered the home she began to call for Sonny. T. Johnson advised that she walked up the stairs to the living room area where she turned the corner towards the second floor.

Tatiana Johnson advised that when she turned the corner one of the subjects had a handgun pointed at her. She advised that she was escorted by the suspect with the dreadlocks into Alexander Wallace's bedroom on the second floor. T. Johnson advised that she was asked several times where the money was at. T. Johnson advised that she was ordered to the ground and was tied up with wires and cable cords that were in the bedroom. T. Johnson advised that the suspects talked about getting S. Wilson into the home. T. Johnson advised that she then heard T. Wallace. She heard one of the suspects ask "where's it at" "where's it at". She then heard T. Wallace respond "it's not here". Referring to money and or drugs.

T. Johnson advised that S. Wilson was then brought into the bedroom and tied up. T. Johnson advised that one of the suspects threw an article of clothing over her face making her unable to see. T. Johnson advised that she overheard the suspects ask T. Wallace where's it at, referring to money and or drugs. T. Johnson advised that one of the suspects walked over to her and kicked her. The suspect then inquired about the apartment in Edgewater Park, New Jersey where she stays at with T. Wallace. T. Johnson and T. Wallace both told the suspects that the money was located in the apartment in Edgewater Park.

T. Johnson advised that the suspect with the dreadlocks was using a cell phone and she could overhear a female's voice on the other end of the phone conversation. T. Johnson advised that T. Wallace stated to the suspects that they were on camera. Located in the home were several home video surveillance cameras placed there some time ago by the homeowner Alexander Wallace.

T. Johnson advised that the suspects began to ask T. Wallace where the camera feed goes to. T. Johnson advised that she then heard a struggle on the main floor and loud thumps. She advised that she heard what she believed were kitchen utensils or knives. Moments later she heard the suspects yell out " take that nigga to the basement". T. Johnson advised that after that she no longer heard the commotion.

T. Johnson advised that the suspect with the dread locks kept coming into the room where she and S. Wilson were at. The suspect told T. Johnson several times that she needed to convince T. Wallace to keep his mouth shut. T. Johnson advised that the suspect told her he knew where she lived. The suspect then told her the address of 838 North Route 130. T. Johnson advised that the suspect then reached into her pants and digitally penetrated her vagina. T. Johnson advised that two other suspects walked upstairs and told him that T. Johnson was his girlfriend. The suspect with the dreadlocks then pulled his hand out of her pants and got on top of S. Wilson. The suspect inquired about how old both the females were. According to T. Johnson the two additional suspects were in the room at one point and were aware that the sexual assault was taking place.

T. Johnson advised that the suspect with the dreadlocks then lifted S. Wilson up off of the floor. He then began to sexually assault S. Wilson. T. Johnson advised that she did not observe the sexual assault because her head was still covered, but she heard S. Wilson performing oral sex on the

suspect with the dreadlocks. T. Johnson advised that the suspect with the dreadlocks said several times that he was "getting entertainment". The suspect told S. Wilson to swallow. She advised that the suspect then tied Wilson's legs.

T. Johnson advised that she remained in the bedroom and heard the suspects in the house. Moments later it was silent. T. Johnson advised that she waited several minutes then was able to get herself free from her restraints. T. Johnson advised that she then untied S. Wilson and walked down into the basement. T. Johnson advised that S. Wilson exited the front door and she located T. Wallace. T. Wallace was tied up, naked and tied up in the back room area to a pole. T. Johnson advised he was bloody. T. Johnson advised she walked back upstairs to the kitchen and obtained a kitchen knife. She then walked back down into the basement and freed T. Wallace from the tape and cords. T. Johnson advised that she exited the house and went to 33 Larkin Road and made contact with the homeowner for assistance.

T. Johnson advised that there was a Comcast Cable representative at the front door of the 31 Larkin Road when the initially pulled up to the house. T. Johnson advised that T. Wallace had a conversation with the Comcast representative who left shortly thereafter. T. Johnson advised that both she and S. Wilson left their cell phones in T. Wallace's vehicle. When she exited the residence after the incident happened she found that the cell phones were missing along with a black in color backpack belonging to T. Wallace which was in the back seat of the vehicle. T. Johnson advised that the suspects asked where both the females' wallets were at. T. Johnson indicated that she did not have one. S. Wilson's wallet was located in the vehicle. T. Johnson advised that the suspects had taken S. Wilson's wallet. T. Johnson advised that T. Wallace walked to his friend's house Malik Diggs, of ████████████████.

At 1918 hours T. Wallace was escorted to the Burlington Township Detective Division interview room. In summary T. Wallace provided a similar account of the incident prior to going to 31 Larkin Road to do laundry. T. Wallace advised that when he pulled up the house he spoke to a Comcast cable representative who was at the home to obtain boxes. T. Wallace advised that the Comcast cable representative then left. T. Wallace advised that he observed three black males walking in the area. T. Wallace advised that they were all dressed similar and appeared to be legitimate workers of some sort as they were all dressed alike. T. Wallace advised that he entered the home and obtained his laundry. T. Wallace advised that he exited and locked the front door. T. Wallace advised that he was approached by one of the subjects who asked if he knew where MCA printing company was located.

T. Wallace advised that one of the suspects asked him for a glass of water. T. Wallace advised that he turned around and opened the front door of the home again and pushed the door closed but was not secured. T. Wallace advised that two of the suspects followed him into the home towards the kitchen. T. Wallace advised that one of the suspects then brandished a handgun. The suspects forced him to the floor in the kitchen and tied him up with cords. T. Wallace advised that he was physically assaulted in the kitchen by kicks and blows to multiple parts of his body. The suspects used their hands, feet, and a gun to strike him. T. Wallace advised that the suspects then took him to the bathroom on the second floor. T. Wallace advised that one of the suspects stated that they were going to get the girls next. T. Wallace advised that the suspects stated to give him money or cocaine. T. Wallace described the suspect that had the handgun as a stocky, black male, light skinned.

T. Wallace advised that he had $700.00 in his pockets and one of the suspects reached into his pocket and pulled it out. T. Wallace advised the suspect that there was no money in the house and that it was at the address in Edgewater Park, New Jersey. T. Wallace advised that he told the suspect

that in an attempt to lure them out of 31 Larkin Road. T. Wallace advised the suspects that there were cameras in the house. T. Wallace advised that the stocky black male then walked down into the basement. T. Wallace advised that he shut the bathroom door and attempted to exit a window in the bathroom. T. Wallace advised that all three suspects then entered the bathroom and pulled him back into the home. T. Wallace advised that the suspects then continued to physically assault him in the bathroom. T. Wallace advised that one of the suspects inquired about the safe that was in his father's room. T. Wallace advised that there was nothing in it.

T. Wallace advised that they then took him into the basement and tied him up. They continued to physically assault him while asking where the money was at. T. Wallace advised that they then left the basement. Moments later T. Johnson entered the basement and untied him. T. Wallace advised that he had never had any contact with these suspects before.

All three suspects were wearing black in color khaki pants and blue in color tee shorts which read something to the effect of "get money" or "make money", "team spitzer". A check of the internet revealed that the tee shorts are possibly related to Eliot Spitzer, a politician from New York.

At police Headquarters Detective Carnivale of the Burlington Township Police Department and Detective Sergeant Craig of the Burlington County Prosecutor's Office interviewed a witness in connection with this investigation. The witness was identified as Jeffery Grandin. Mr. Grandin works for the U.S. Postal Service and delivers mail in the neighborhood of Lagorce Square in Burlington Township. J. Grandin advised that while delivering the mail he observed a newer model Hyundai Elantra with New York State license Plates parked directly in front of 31 Larkin Road. J. Grandin recalled seeing a black female located in the vehicle that was on a cell phone.

On April 22, 2014 I received an email from Detective Robert Hageman of the Burlington County Prosecutor's Office concerning the evidence that was submitted to the New Jersey State Police Forensic DNA Laboratory. The NJSP Forensic Laboratory obtained a CODIS hit containing DNA profile from item listed 20-1 a Poland Spring water bottle that was located in the home of 31 Larkin Road. The DNA profile belongs to a Michael Robinson, DOB:02/04/1978, FBI number 237451XA8. M. Robinson's last known address is 171 Linden Boulevard, Queens, New York.

On July 23, 2014 complaint number 2014-349-0306 was signed against Michael Robinson for numerous offenses to include: Kidnapping, Robbery, Burglary, Aggravated Assault, Unlawful Possession of a Weapon, Possession of a Weapon for Unlawful Purposes, Certain Person not to Possess a Weapon, Conspiracy to Commit Aggravated Sexual Assault.

Once the aforementioned warrant was signed, the United States Marshals Service NY/NJ Regional Fugitive Task Force was contacted in order to assist with the apprehension of Mr. Robinson. On August 1, 2014 Detective Gorlin, of the United States Marshals Service, informed me that while reviewing the record from Michael Robinson's cell phone the phone number (607) 343-8574 was the most frequently called number from his phone. A search of this number shows the phone number belongs to Adriane Williams. Detective Gorlin checked with New York State Parole office and obtained visitor records from when Michael Robinson was incarcerated. Detective Gorlin advised that Adriane Williams frequently visited him while he was incarcerated. Detective Gorlin advised her address provided was 103 Pennsylvania Avenue, Binghamton, New York.

A check of Adriane Williams' New York Driver's License number 820699500 shows an address of 103 Pennsylvania Avenue, Binghamton, New York as well. Adriane Williams is described as black female, approximately five feet six inches, and weighs approximately 210 pounds, brown hair and brown eyes. According to Detective Gorlin Michael Robinson currently receives food stamps and public assistance from the state. Michael Robinson provided the address of 103 Pennsylvania Avenue, Binghamton, New York when he registered. A. Williams matches the description of the female who Jeffery Grandin observed sitting in the white vehicle outside of 31 Larkin Road when the crimes occurred.

Detective Gorlin advised me that he contacted Sprint Spectrum L.P. and verified that the phone records being sought were still available. On August 5, 2014, Burlington County Superior Court Judge Claypoole granted my request for a Communications Data Warrant REB-SLC-BUR-119-CDW2014. For the cellular phone facility connected to Michael Robinson. On August 06, 2014, Burlington County Superior Court Judge Claypoole granted my request for a Communications Data Warrant REB-SLC-BUR-122-CDW2014. For the cellular phone facility connected to Adriane Williams.

On August 11, 2014 Detective Gorlin contacted me and advised that he received the cellular phone records for the cellular phone facility belonging to Adriane Williams. The records and GPS coordinates show that her cell phone was in the area of 31 Larkin Road, on September 11, 2013 during the time of the crimes. There were telephone calls made to and from A. Williams' telephone during the time of the crime. The telephone number was (917) 370-3914. This telephone number was on M. Robinson's telephone call records as well on September 11, 2013 during the time of the crimes.

Detective Gorlin advised that he checked the public information database C.P. Clear and found that it comes back to a Kevin Smith, date of birth July 18, 1968, social security number 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, FBI # 881381PA1, New York ID number 07145565L. Kevin Smith has a Facebook account http://facebook.com/?sk=welcome#!/profile.php?id=100005752694331&fref=ts . A check of Kevin Smith's Facebook page has numerous photographs of Kevin Smith. The photographs depict a black male with dreadlocks. In several photographs Kevin Smith is wearing a "jiffy pop" style hat. This matches the description provided by both T. Johnson and S. Wilson. This matches then composite sketch that was drawn by N.J.S.P. Trooper Theckston on September 24, 2013.

Kevin Smith placed on his Facebook account that his current city and hometown is Brooklyn, New York. Detective Gorlin determined that (917) 370-3914 is serviced by New Cingular Wireless Communications. On August 13, 2014 Burlington County Superior Court Judge Claypoole granted my request for a Communications Data Warrant REB-SLC-128-CDW-2014 for Kevin Smith's cellular phone cell sites and records. I provided the warrant to Detective Gorlin to obtain the records.

7. On September 2, 2014 Detective Gorlin contacted me and confirmed that the records and GPS coordinates show that Kevin Smith's cell phone was in the area of 31 Larkin Road, on September 11, 2013 during the time of the crimes. There were telephone calls made to and from A. Williams' telephone during the time of the crime.

*(Use continuation sheets if necessary)*

I am aware of these facts because:

I am the complaining person

Oath: Sworn and Subscribed to before me
This __3__ day of __Sept__, 20__2014__

_____
(Signature/title of person administering oath)

_____
(Signature of complaining witness)

OR

**Certification:** I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
*(Signature of complaining witness)*

Date: _____

7 of 7